NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARIBEL CARABALLO MEDINA,**<br><br>  Plaintiff,<br><br> v.<br><br>**CAROLYN W. COLVIN**<br>**ACTING COMMISSIONER OF**<br>**SOCIAL SECURITY,**<br><br>  Defendant. | Civ. No. 2:14-cv-06241 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

 Plaintiff Maribel Caraballo Medina brings this action seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her Title II application for a period of disability and disability insurance benefits, and Title XVI application for supplemental security income. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.   LEGAL STANDARDS**

  **A. The Five-Step Sequential Analysis**

 Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four.

1

*Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II.   BACKGROUND

Plaintiff Maribel Caraballo Medina is a fifty-four year-old resident of Clifton, New Jersey, who seeks a finding of disability due to diabetes mellitus and depression. Administrative Transcript ("Tr.") 8, 55, 73. She has a high school education, speaks English, and has no past relevant work experience as defined by the Social Security Regulations. Tr. 59.

On September 3, 2010, Plaintiff applied for a period of disability and disability insurance benefits ("DIB") under Title II. Tr. 53. Plaintiff then filed a Title XVI application for supplemental security income on September 17, 2010. *Id.* Plaintiff alleged that she could no longer work due to symptoms of depression and diabetes. Tr. 73. According to Plaintiff, her disability began in April 2008 after she lost her job and became depressed.[1] *Id.*

Plaintiff requested a hearing before the ALJ after her initial application and Request for Reconsideration were both denied. Tr. 100, 106, 114. After conducting a hearing, the ALJ denied Plaintiff's claim on December 14, 2012. Tr. 50. The ALJ found that, subject to

---

[1] While she provided contradictory reasons for why she was terminated, Plaintiff does not claim that her disability was the cause. Tr. 28, 299.

2

certain non-exertional restrictions, Plaintiff's residual functional capacity ("RFC") enabled her to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  Tr. 57. Consequently, the ALJ concluded that there existed a significant number of jobs – both regionally and nationally – that Plaintiff was capable of performing.  Tr. 60. On August 22, 2014, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. Tr. 1.  Plaintiff now appeals.

### A.  Summary of the Record

The record includes medical records from treating physicians Drs. Patrick Beaty, M.D. and Brett Freirna D.O., reports from two consultative examiners, Drs. Alexander Hoffman, M.D. and Kim Arrington Psy.D., case analyses from two non-examining physicians, Drs. Joseph Micale, M.D. and Pamela Foley, Ph.D., interrogatory responses from vocational expert ("VE") Rocco Meola, and Plaintiff's own testimony.

Plaintiff's treating physician, Dr. Beaty, began treating Plaintiff in May 2010.  Tr. 328.  On September 9, 2010, Dr. Beaty noted in a letter that he was treating Plaintiff for diabetes mellitus, post-cataract surgery, and "mild depression."  Tr. 292.  Treatment notes from 2012 further indicate that Plaintiff continued to suffer from diabetes and depression. Tr. 354-61, 368-75. Dr. Beaty's records also noted that Plaintiff's diabetes was without complication, and that Plaintiff did not experience any eye symptoms, blurry vision, tingling, burning, or numbness. *Id.* On March 7, 2012, Dr. Beaty completed an impairment questionnaire indicating that because Plaintiff could not sit, stand or walk for more than two hours at a time she was unable to perform sedentary work as defined by the Regulations. 20 C.F.R. §§ 404.1567(a), 416.967(a).  Tr. 330-34.  The report also included supporting diagnostic results, and stated that Plaintiff suffered from fatigue, weakness, impaired vision, numbness in her extremities, burning neuropathic pain, and a variety of affective disorders.  Tr. 328-29.

On October 21, 2010, consultative physician Dr. Hoffman performed an orthopedic examination of Plaintiff.  Tr. 293.  Dr. Hoffman's report indicated that Plaintiff walked normally, had "no difficulty getting on and off the table," demonstrated a "good range of motion at the wrist, elbow, and shoulder," and was able to "balance on either leg, do a deep knee bend, flex fully at the waist, [sic] walk on heels and toes." Tr. 293-94.  Dr. Hoffman concluded that Plaintiff suffered from diabetes without major complication, and that she suffered primarily from depression.  Tr. 294.

Consultative physician Dr. Kim Arrington examined Plaintiff on October 22, 2010. Dr. Arrington reported that Plaintiff was coherent, but that she had trouble sleeping, and was limited in attention, concentration, and memory.  Tr. 299-300.  Dr. Arrington also found that Plaintiff was of average intelligence and could live independently.  Tr. 301.  She opined that despite limited attention and concentration, Plaintiff was "able to follow and understand simple directions and instructions … perform many simple tasks independently

3

… [and] maintain a regular schedule." *Id.* The report concluded that Plaintiff suffered from adjustment disorder "with mixed anxiety and depressed mood." *Id.*

While not examining Plaintiff in person, Social Security Administration physician Dr. Joseph Micale reviewed Plaintiff's disability claim. Dr. Micale's report stated that Plaintiff suffered from diabetes without major complications, and that her vision had been restored. Tr. 303. Concluding that Plaintiff's medical impairments were not severe, the report noted that she was independent, fully capable of lifting and squatting, but was unable to walk more than two blocks at a time. *Id.*

In addition, Social Security Administration physician Dr. Pam Foley evaluated Plaintiff's psychiatric record. Dr. Foley found that Plaintiff had "mild" restrictions in daily activities, "moderate difficulties in maintaining social functioning," and "moderate difficulties in maintaining concentration, persistence, or pace." Tr. 314.

Plaintiff testified at the hearing. She stated that her disability began when she became depressed after losing her job in 2008, Tr. 73, which caused her to become isolated and withdrawn. Tr. 79-80. Plaintiff complained of impaired vision, memory loss, poor concentration, and some combination of pain, numbness and tingling in her hands and feet as a result of her diabetes. Tr. 73-75. With regards to her eyesight, Plaintiff testified that she continued to have blurred vision in her right eye despite undergoing cataracts surgeries in 2009 and 2010. Tr. 74. Plaintiff further testified that she experienced numbness, pain and tingling in her feet four to five times a week, and that the symptoms subsided if she sat or lay down for approximately twenty minutes. Tr. 76-78. Plaintiff also stated that she experienced pain in her right index finger roughly three times a week, which made it difficult to lift or hold things.[2] However, Plaintiff's testimony indicated that she was capable of driving and shopping, Tr. 80, while a self-completed function report showed that she routinely cooked and cleaned for herself. Tr. 222-23.

Finally, VE Rocco Meola concluded that someone of Plaintiff's RFC (as determined by the ALJ), age, education, and work experience has the ability to work as a sorter, bagger, or produce weigher. Tr. 272.

### B. The ALJ's Decision

At step one, the ALJ determined that Plaintiff did not engage in substantial activity since the alleged onset date. Tr. 55. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus and adjustment disorder. *Id.* At step three, the ALJ found that the severity of Plaintiff's impairments, individually or combined, did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Tr. 56.

---

[2] Plaintiff is right-handed. Tr. 294.

At step four, the ALJ found that Plaintiff has the RFC to perform light work, meaning she could lift or carry twenty pounds occasionally and ten pounds frequently, walk or stand for a substantial portion of the workday, and push or pull controls within the given weight restriction. 20 C.F.R. §§ 404.1567(b), 416.967(b); Tr. 57. The ALJ's RFC finding also included three non-exertional limitations: Plaintiff was capable of work that involved only (1) simple instructions; (2) occasional interaction with others; and (3) occasional changes in "essential job functions." *Id.* At step five, the ALJ relied on the VE's interrogatory answers to conclude that given her RFC, age, education, and occupational history, Plaintiff was capable of performing work as a sorter, bagger, or produce weigher. Tr. 59-60. The ALJ found that these positions existed in "significant numbers" in the national economy, as well as in the region where Plaintiff resides. Tr. 60. In light of these findings, the ALJ concluded that Plaintiff was not disabled under the Act and therefore not entitled to benefits. *Id.*

In determining that Plaintiff was capable of light work, the ALJ primarily relied on medical reports from the Social Security Administration's consultative examiners. Tr. 57-59. The ALJ cited Dr. Hoffman's conclusion that Plaintiff had diabetes without complications, 20/20 vision, and no physical limitations. Tr. 58. In addition, the ALJ referenced Dr. Arrington's report, which found that Plaintiff possessed average intellectual functioning, such that she was capable of maintaining a schedule, following simple directions, and performing simple tasks without supervision. *Id.*

The ALJ further ruled that Plaintiff's testimony regarding the severity of her symptoms was not credible. Tr. 57. In particular, the ALJ found that Plaintiff's statements were inconsistent with the reports submitted by Drs. Hoffman and Arrington, as well as the fact that she had received only conservative treatment for her ailments. *Id.* Furthermore, the ALJ noted that Plaintiff's stated capacity to perform daily tasks conflicted with her description of the "intensity, persistence and limiting effects" of her symptoms. *Id.*

The ALJ assigned little weight to the opinion of the treating physician, Dr. Beaty, because it was not supported by "any objective medical evidence." Tr. 59. Specifically, the ALJ concluded that Dr. Beaty's report was inconsistent with the consultative examiners' reports, the treatment that Plaintiff received, and any other "signs or medical findings." *Id.*

### III. DISCUSSION

Plaintiff challenges the ALJ's finding that she was not disabled under the Social Security Act. Specifically, Plaintiff argues that: (1) the ALJ did not properly weigh the treating physician's opinion; (2) the ALJ did not properly determine the credibility of

5

Plaintiff's testimony; and (3) the ALJ relied on flawed testimony from the VE.  The Court will address these arguments in turn:

### A. Step Four: Failure to Properly Weigh The Treating Physician's Opinion

Plaintiff argues that the ALJ erred when it assigned little weight to the opinion of Dr. Beaty.  The Court disagrees.

When determining a claimant's RFC, an ALJ will analyze and assign weight to medical opinions.  20 C.F.R. §§ 404.1527, 416.927.  A treating source's opinion of the nature and severity of an individual's impairment must be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); Social Security Ruling (SSR) 96-2p.  Otherwise, a treating source's medical opinion must be weighed according to the factors defined in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  SSR 96-2p.

Here, Dr. Beaty's opinion was inconsistent with substantial evidence on record.  For example, Dr. Beaty's treatment notes indicate that Plaintiff did not have eye problems, blurry vision, tingling, burning sensations, or numbness.  Tr. 355, 358, 369, 372.  Furthermore, Dr. Beaty's medical opinion also conflicts with that of the Social Security Administration's consultative examiner, Dr. Hoffman, who concluded that the Plaintiff had diabetes without complications, and 20/20 eyesight.  Tr. 294.  These inconsistencies are sufficient grounds for rejecting a treating physician's opinion.  *See Lyons-Timmons v. Barnhart*, 147 F. App'x 313, 316 (3d Cir. 2005).  Therefore, the ALJ did not err in granting Dr. Beaty's opinion less than controlling weight.

Moreover, in declining to give Dr. Beaty's opinion controlling weight, the ALJ properly considered all of the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c).  Specifically, the ALJ noted the length of the treatment relationship, the frequency of visits, and the type of treatment received.  Tr. 59.  More significantly, the ALJ's decision to discount Dr. Beaty's opinion was specifically predicated on the opinion's lack of objective support and its inconsistency with the record.  *Id.*  The ALJ also concluded that Dr. Beaty is "less knowledgeable than state Agency doctors about the SSA definition of disability." *Id.  See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (stating that a medical source's understanding of the disability program is a relevant consideration).  Finally, because Dr. Beaty is a primary care physician, Tr. 81, specialization is not a relevant factor in this case. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  Thus, substantial evidence supported the ALJ's decision to grant Dr. Beaty's opinion little weight was not erroneous.

6

### B. Step Four: The ALJ's Credibility Assessment

Plaintiff challenges the ALJ's decision not to credit Plaintiff's testimony describing the intensity, persistence and limiting effects of her symptoms. While a plaintiff's testimony of subjective pain and inability to perform even light work is normally entitled to great weight, an ALJ may reject those claims if he or she explains why they are inconsistent with the medical evidence of record. *See, e.g.*, *Harkins v. Commissioner of Social Security*, 399 Fed.Appx. 731, 735 (3d Cir. 2010) (citing *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990)). Moreover, when determining the credibility of a plaintiff's testimony, an ALJ may consider a plaintiff's medical treatment and ability to perform daily tasks. *See Harkins*, 399 Fed.Appx. at 735; *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). In this case, the ALJ gave several well-supported reasons for his decision. First, the ALJ determined that Plaintiff's allegation of complete disability was inconsistent with the State's consultative examiner reports. Tr. 58. In addition, Dr. Arrington's psychological evaluation concluded that Plaintiff was a person of average intellectual functioning who could follow simple directions, perform simple tasks independently, and maintain a regular schedule. *Id.* The ALJ also relied on the Plaintiff's admission that she is able to carry out daily tasks. Tr. 57. Finally, the ALJ noted that Plaintiff's allegations of disability were inconsistent with the fact that her treatment was limited to medication. *Id.* For these reasons, the Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

### C. Step Five: Flawed Vocational Expert Testimony

Finally, Plaintiff argues that the VE's testimony was flawed. Specifically, Plaintiff argues that the testimony relied on a hypothetical question that did not account for her moderate limitations in concentration, persistence or pace. Tr. 56. Generally, a VE may testify about a plaintiff's capacity to work by responding to a hypothetical describing someone with the plaintiff's mental and physical limitations. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). However, a VE's response to the hypothetical constitutes substantial evidence only if it accurately reflects all of the plaintiff's credibly established impairments. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Plaintiff argues that the ALJ's hypothetical in this case failed to account for her moderate limitations in concentration, persistence, or pace. However, the Third Circuit has held that a hypothetical limiting a plaintiff to "simple routine tasks" adequately accounts for such limitations. *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008); *Menkes v. Astrue*, 262 F. App'x 410, 412-13 (3d Cir. 2008). *See also Padilla v. Astrue,* No. 10-CV-4968 ES, 2011 WL 6303248, at *10 (D.N.J. Dec. 15, 2011) (holding that an RFC limiting the plaintiff to "simple, unskilled work" accounted for moderate limitations in terms of concentration, persistence or pace); *Padilla v. Comm'r of Soc. Sec.*, No. CIV.09-2897 (WJM), 2010 WL 2346650, at *6 (D.N.J. June 9, 2010) (holding that an ALJ's hypothetical limiting the plaintiff to "simple, routine repetitive jobs in a low stress setting" sufficiently conveyed "difficulties in maintaining concentration and pace."). Here, the ALJ's hypothetical

contained a non-exertional limitation analogous to the one given in *McDonald* and *Menkes*, as it described someone who could "understand, remember and carry out simple instructions." Tr. 271. Consequently, the Court finds that the ALJ's hypothetical accurately reflected all of Plaintiff's credibly established limitations.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 26th, 2015**